616    APPELLATE COURTS OF ILLINOIS.

Mapes v. St. Louis & Northwestern Ry. Co., 165 Ill. App. 616.

## Arthur E. Mapes, Appellee, v. St. Louis & Northwestern Railway Company, Appellant.

1. EVIDENCE—*competency of prior act of negligence.* A prior act of negligence by a particular servant of the defendant is not competent except for the purpose of establishing the incompetency of such servant as affecting the master's liability for retaining in his employ an incompetent servant.

2. MASTER AND SERVANT—*how incompetency of servant may be established.* A single act of negligence resulting in an accident may show incompetency if such act is preceded or accompanied by other acts and circumstances indicating a lack of knowledge or capacity or if the act is done wantonly regardless of consequences, or maliciously. The general rule, however, is that a single act or omission is not sufficient to prove incompetency.

Action in case for personal injuries. Appeal from the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding. Heard in this court at the March term, 1911. Reversed and remanded. Opinion filed November 11, 1911.

TERRY & GUELTIG, for appellant; GEORGE W. BURTON and GEORGE W. BLACK, of counsel.

C. H. BURTON, for appellee.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

The declaration in this case consists of two counts. At the conclusion of the testimony the court excluded the evidence as to the second count which charged negligence on account of defective appliances. The trial was then continued and concluded upon the allegations of the first count.

The first count alleges that the defendant was possessed of, using and operating certain cars on a certain electric railway extending from East St. Louis to Springfield, Illinois, through a place called Loveless Siding, and that plaintiff was employed as brakeman on a certain express car, run from the north towards

the south, at about 2:30 on the morning of May 20, 1910. The declaration further avers that it was the duty of the defendant to exercise due care and diligence in the selection of its motorman and conductor in charge of said car; that the defendant did not regard its said duty in this behalf but negligently employed one J. E. Bobbett as motorman and placed him on said car, with the plaintiff as brakeman, and C. E. Thompson as conductor, to operate and control said car.

The declaration then avers that the said J. E. Bobbett was then and there a careless, negligent and incompetent motorman, which fact was known to the defendant or by the exercise of due diligence could have been known, and of which fact the plaintiff was not advised; and avers that while plaintiff was in the performance of his duty as brakeman, with due care and diligence for his own safety, the said car was so negligently run and driven by its said motorman that the said car while runing at a high rate of speed, to wit, thirty miles an hour collided with a north-bound car of defendant at or near Loveless Siding aforesaid, and thereby permanently injured the plaintiff, etc.

The defendant, so far as the abstract discloses, pleaded the general issue. The case was tried before a jury and a verdict given for the plaintiff in the amount of $3,938.70; motion for a new trial was overruled and judgment rendered upon the verdict, from which this appeal is taken. The facts and circumstances which gave rise to the alleged cause of action are briefly as follows:

About April 15th, before the injury to the plaintiff, he was in the service of the defendant as brakeman; he at first did such work as was required to give him proper information in regard to his duties, and on May 15th began his regular work; about eight o'clock of the 19th the crew with which plaintiff was working ran to Granite City, thence to Venice and there did some switching and about eleven o'clock p. m. ran their car to Granite City and there received orders to pro-

618 APPELLATE COURTS OF ILLINOIS.

Mapes v. St. Louis & Northwestern Ry. Co., 165 Ill. App. 616.

ceed north with their train; they ran up to Monroe Siding near Virden, and there changed cars with a crew from Peoria and took a train called the High-Ball Express and proceeded south as an extra; at Carlinville they received orders to stop at Moody Siding and allow the Peoria Sleeper to pass, which was done. At this point the conductor received orders from the booth to run to Loveless Siding four and one-half miles further south; the conductor informed the motorman and brakeman of this order; the Express train consisted of motor car and two trailers, which was loaded with whiskey, and the crew proceeded with the train towards Loveless Siding. After leaving Moody Siding the plaintiff rode near the center of the motor car on some whiskey cases and the conductor and motorman were riding on the front platform. The High-Ball Express was ordered to take the siding at Loveless Siding for the passage of the Springfield Sleeper going north; the Express, under the control of Bobbett, was running at the rate of about thirty-five miles an hour and collided with the Springfield Sleeper at or near Loveless Siding, and as a result the conductor and motorman were killed and the plaintiff badly injured. The track was straight for a mile north of Loveless Siding. The head-light on the Springfield Sleeper was burning brightly, and was on the same track as the Express with nothing to prevent the motorman from seeing it.

It is further disclosed by the evidence that the motorman, Bobbett, on about September 14, 1909, failed to observe or neglected to heed the danger signal and ran into an open switch; he was badly crippled by the accident and unable to work for several weeks but resumed his work in a few weeks.

It is further disclosed by the evidence that Bobbett had about eight years' experience as conductor and motorman on the electric roads, and that at the time of his employment by the defendant he was examined carefully and critically as to his ability and com-

petency and proved to be a competent man, and in fact sustained a good reputation as such at the time of his death; that the incident on September 14, 1909, was the only accident that had happened to him and the only time he had ever violated the rules of the company, so far as the defendant knew, and in fact was the only negligent or careless act ascribed to Bobbett in his eight years of experience; except having permitted the plaintiff on one occasion to run the car, and had, as plaintiff claimed, failed upon one or two occasions to go into the booth with the conductor to receive the orders and register, but these facts were not disclosed by the plaintiff to the defendant and the defendant had no knowledge of them prior to plaintiff's injury.

In our view of the record in this case, the controlling and only question necessary to consider is, was the defendant guilty of negligence in the employment of Bobbett as motorman and the retention of him in its employ after the incident of September 14, 1909? As to the first employment by the defendant of Bobbett the evidence is overwhelming that he was competent and thoroughly qualified for the position. It is disclosed that he had experience as motorman and conductor for several years without having had a single mishap, or having been guilty of a single act of negligence. He was also subjected by the officers of the road to a very rigid examination as to his qualifications; he passed a physical examination and underwent an examination at the company's shops as to his mechanical knowledge and experience and was recommended as competent by the mechanical engineer of the company, and the officers appeared to be satisfied that he was a competent man to act as motorman in the operation of defendant's cars, and we think they were fully warranted in so determining, and that there was no negligence in the employment of Bobbett as motorman, and indeed no complaint is made that there was any negligence in this respect.

The next question is, was the defendant justified in retaining Bobbett in its service after the incident of September 14, 1909, in which Bobbett ran into an open switch and ditched his car? The negligence of the motorman, if any such has been proven, on the occasion of May 20, 1910, when plaintiff was injured, cannot be considered in determining the liability of the defendant in this case for the reason that such a negligent act would only affect the liability of the defendant for afterwards keeping him in its employment. Smith v. C. P. & St. L. R. R. Co., 236 Ill. 369.

It is contended by counsel for appellee that a single act of neglect resulting in an accident may show incompetency, which is true, if such act is preceded or accompanied by other acts and circumstances indicating a lack of knowledge or capacity such as was shown in the case of Smith v. C. P. & St. L. R. R. Co., *supra;* or if the act is done wantonly regardless of consequences, or maliciously.

It is said by the Supreme Court in the case of Consolidated Coal Company v. Seniger, 179 Ill. at page 373: "It is true that a competent engineer may be negligent on a particular occasion and not be above the ordinary frailties of human nature, and that incompetency is not shown by some particular act of negligence; and yet, one who knows how to run and handle an engine properly and who has the physical strength to do so, cannot be said to be competent for the position of engineer if he is habitually imprudent, careless and reckless." There is nothing in this record that discloses that the accident of September 14, was actuated by malice or brought about by the ignorance or want of knowledge or skill upon the part of Bobbett. The general rule laid down by the authorities is, that a single act or omission is not sufficient to prove incompetency, subject to the exceptions above noted. Wood on Master and Servant, Section 432; C. & E. I. R. R. Co. v. Myers, 83 Ill. App. 469, and other authorities therein cited.

FOURTH DISTRICT—NOVEMBER, 1911.     621

Mapes v. St. Louis & Northwestern Ry. Co., 165 Ill. App. 616.

It appears from the evidence that at the time of the accident of September 14, 1909, that Bobbett received an electrical burn and that this burn could not have been received after the car turned over but must have been received immediately prior thereto, and that Bobbett may have been temporarily, through no fault of his own, unable to stop his train in time to prevent its going into the open switch.   There was also some evidence tending to show that there were obstructions along the road at that time that prevented Bobbett from seeing the danger signal; this, however, is contradicted.   It also appears from the evidence that John Lunsden, a conductor, at the time Bobbett left this switch and ran out to the north, was on the side track with his freight train and Lunsden told him to go ahead and he would shut the switch, and it may be that the assurance of Lunsden that he would close the switch had some influence upon Bobbett's conduct upon this occasion.   At all events, after this incident the officers of the company made an investigation of the conduct of Bobbett upon this occasion and found that he was not to blame for the accident, and while it is true that this investigation is charged by the appellee to be a mere white-washing of Bobbett, yet we do not see anything in the record that justifies this assertion.   There could be no motive upon the part of the officers, as far as we can see, to misrepresent or conceal at the time the truth with reference to Bobbett's conduct upon that occasion.   In the case of C. C. C. & I. C. R. R. Co. v. Troesch, 57 Ill. 155, where there had been three accidents by the engineer Tupper, and as to two of them the superintendent had examined the circumstances and became satisfied that it was not the fault of the engineer and as to the other one the witness himself had exonerated the engineer, the court there says that the evidence is not sufficient to warrant the finding of the incompetency of the engineer.

We do not believe that the evidence in this case is sufficient to warrant a jury in finding that the motor-

man Bobbett was by this evidence proven incompetent, at the time he was employed and retained in the service of the defendant, and the judgment should be reversed.

*Reversed and remanded.*